**LaTRIESTE RESTAURANT AND CABARET INC., doing business as The Diamond Club, Plaintiff–Appellant,**

v.

**VILLAGE OF PORT CHESTER; Domenick Tamarro; James Savage; Christine Korff; Michael Antaki; Thomas Ceruzzi; Janusz Richards; Zoning Board of the Village of Port Chester; John Branca; Anthony Fontana; John Belfatto; and Carl Verrastro, Defendants–Appellees.**

No. 2495, Docket No. 94–7479.

United States Court of Appeals,
Second Circuit.

Argued Aug. 8, 1994.

Decided Nov. 21, 1994.

Gerald Padian, New York City (Tashjian & Padian), for plaintiff-appellant.

George O'Hanlon, Port Chester (Aldo Vitagliano, Corp. Counsel), for defendants-appellees.

Before WINTER and LEVAL, Circuit Judges, SKRETNY, District Judge.*

LEVAL, Circuit Judge:

This is an appeal from a grant of summary judgment in favor of the defendants in the United States District Court for the Southern District of New York, Charles L. Brieant, *Judge.* LaTrieste Restaurant and Cabaret, Inc., now doing business as "The Diamond Club," brought the action under 42 U.S.C. § 1983 to enjoin the Village of Port Chester, its mayor, police chief, and several other village officials, from enforcing a variety of laws and ordinances against it. LaTrieste alleged in its complaint that the defendants were enforcing these laws, and particularly a zoning classification that forbade it from operating as a cabaret, selectively and unconstitutionally, in order to prevent plaintiff from exercising its First Amendment right to have topless dancing on its premises.

## Background

Port Chester's zoning ordinance prohibited the operation of a cabaret in the zone encompassing LaTrieste's site. In December 1989, the Port Chester Zoning Board of Appeals granted to Citrone Development Corporation, the previous occupant of the site, a use variance which permitted it to operate a cabaret—that is, to feature dancing and live entertainment—on its premises after its dinner hour ended. Under the terms of the variance, the "cabaret hours [were] to start no earlier than 10 p.m."

In February 1992, LaTrieste entered into a lease for the same property. From May 1992 until May 1993, LaTrieste operated a dinner/cabaret format on the premises. LaTrieste submitted undisputed evidence that during this period it openly operated as a cabaret prior to 10 p.m., with the full knowledge of village officials, and without the village ever seeking to enforce the restriction.[1] Judge Brieant found it undisputed that during this period "[d]efendants knew LaTrieste was operating in violation [of the 10 p.m. restriction], but did nothing." (JA159) Because the Italian restaurant/cabaret format turned out to be financially unsustainable, LaTrieste switched to a sports bar/topless cabaret format in May 1993. LaTrieste alleges that when it began featuring topless entertainment, the village began a pattern of harassment designed to prevent LaTrieste

---

* The Honorable William M. Skretny, United States District Judge for the Western District of New York, sitting by designation.

1. LaTrieste supports this claim by noting that it regularly advertised start times prior to 10 p.m. in local newspapers, and that members of the Port Chester Police Department regularly inspected the premises prior to 10 p.m. while live cabaret entertainment was taking place.

from doing so. The harassment included summonses, arrests, fines, the sudden enforcement of a variety of ordinances and regulations, the issuance of numerous notices of violation, and a refusal to act on LaTrieste's applications for permits.[2] In May 1993, the village sent LaTrieste notice that it was violating the 10 p.m. requirement of its variance, and that it must cease operating before 10 p.m. or face the revocation of its certificate of occupancy.

LaTrieste then petitioned the Zoning Board of Appeals to lift the 10 p.m. restriction on the grounds that its operation as a cabaret prior to 10 p.m. would not cause traffic congestion; a public hearing was held on the issue on May 25, 1993. Many Port Chester residents, including the mayor, spoke out against topless dancing at the meeting and urged the board to deny the request for a waiver. The board held that the time to appeal the restriction had expired thirty days after its issuance in 1989, and denied the request to lift the condition.

In September 1993, LaTrieste commenced a proceeding in New York State Supreme Court against the village's Zoning Board under Article 78 of the Civil Practice Law and Rules. LaTrieste's petition sought to vacate the zoning board's decision and to require it to lift the 10 p.m. restriction. Justice Lange held that because LaTrieste knew or should have known of the conditions of the variance when it leased the property, any hardship was self-created; he denied the petition. (JA58).

On January 14, 1994 and on February 16, 1994, LaTrieste received letters from the Port Chester police department stating that LaTrieste's certificate of occupancy would be revoked if it did not cease operating before 10 p.m.

On January 18, 1994, LaTrieste commenced this action. The complaint alleges that village officials, by a campaign of harassment intended to put LaTrieste out of business, are denying it equal protection of the laws and interfering with its First Amendment rights; it seeks an injunction barring the village from revoking its certificate of occupancy by reason of violation of the 10 p.m. restriction, and from unlawfully interfering with LaTrieste's right to allow topless dancing. The district court granted the defendants' motion for summary judgment, finding that LaTrieste was "collaterally precluded from once again litigating the same issue or fact [as previously litigated in the Article 78 proceeding], even if that subsequent litigation is based upon a different claim or legal theory." Because we agree with the plaintiffs that they have raised colorable issues of fact, and that the instant lawsuit is not barred by the Article 78 adjudication, we reverse the grant of summary judgment.

## Discussion

■ It is well-settled that summary judgment may be granted only if there is "no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). On summary judgment, all facts and inferences therefrom are to be construed in favor of the party opposing the motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), and appellate review is *de novo, Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994).

LaTrieste's principal claim in the federal action is that the village officials have selectively enforced the laws in an attempt to prevent LaTrieste's exercise of protected expression by exhibiting topless dancing. Judge Brieant granted summary judgment for two reasons: First, that the right and duty of the village to enforce its zoning restrictions is not lost through continued prior failure to enforce (JA165); second, that LaTrieste was barred from litigating the question because of its earlier suit under Article 78 (JA164)

---

**2.** LaTrieste alleges, *inter alia,* that the defendants ordered it to remove signs that were the same size as signs they replaced and had never before been noticed as violations; that the Village simply never responded to its request to build a stage on the premises; and that it has been subjected to a persistent pattern of police harassment since switching over to the topless format.

We agree with Judge Brieant that principles of laches or estoppel do not bar a municipality from enforcing ordinances that have been allowed to lie fallow. *City of Yonkers v. Rentways Inc.,* 304 N.Y. 499, 505, 109 N.E.2d 597 (1952); *New York State Medical Transporters Assoc. v. Perales,* 77 N.Y.2d 126, 130, 564 N.Y.S.2d 1007, 1010, 566 N.E.2d 134, 137 (1990). But that fails to address the heart of LaTrieste's claim, which is not only that the village previously failed to enforce the restrictions, but also that it is now enforcing them selectively, discriminatorily, and for an unconstitutional motive of suppressing free expression. A claim of selective enforcement rests on different principles from laches. Where a town enforces a previously dormant zoning regulation against only those of a certain race, religion, or political affiliation, it is the constitutional principle of equal protection that is violated (regardless whether the doctrine of laches is applicable). Although selective enforcement is a "murky corner of equal protection law in which there are surprisingly few cases," *LeClair v. Saunders,* 627 F.2d 606, 608 (2d Cir.1980), *cert. denied,* 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981), we have ruled that a claim of selective enforcement may lie in a situation such as the one presented here. In *LeClair,* for example, we wrote that a violation of equal protection for selective enforcement would arise if:

(1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.

*Id.* at 609–10. *See also 303 W. 42nd St. Corp. v. Klein,* 46 N.Y.2d 686, 416 N.Y.S.2d 219, 389 N.E.2d 815 (1979); *cf. Brady v. Town of Colchester,* 863 F.2d 205, 216–17 (2d Cir.1988).

LaTrieste's proofs met the standard of *LeClair.* As to selective treatment, the appellees contend that because the use variance and restriction are specific to the appellant's premises and govern no other in the village, there can be no claim of selective enforcement. This argument is mistaken. While it may be true that there are no *other* covered establishments, the comparison of the town's enforcement of the 10 p.m. restriction against the same premises prior to the start of topless dancing with its enforcement afterwards, can provide an adequate basis of comparison. The village failed to enforce the 10 p.m. restriction against a restaurant that did not exhibit topless dancing and, very shortly thereafter, did enforce the restriction against a restaurant that did exhibit topless dancing. *Cf. 303 W. 42nd St. Corp. v. Klein,* 46 N.Y.2d at 696–97, 416 N.Y.S.2d at 225–26, 389 N.E.2d at 820–21 (highly suspicious that adult-bookstore's partial sprinklerization plan had been approved for two years and was only revoked when antipornography drive commenced). LaTrieste has unquestionably raised a triable question of fact on this issue. It appears to be undisputed, and Judge Brieant specifically found, that the village never enforced the 10 p.m. restriction prior to the institution of topless dancing.

The evidence clearly raises a question of material fact that the eventual enforcement was intended to inhibit the exercise of a constitutional right. LaTrieste submitted substantial uncontroverted evidence that the village's various enforcement tactics were adopted because it did not want a topless bar operating within its borders. As examples, Port Chester's Police Chief Verrastro told LaTrieste's principals that "I do not want a topless club in my town," and that such an establishment would "not be permitted in Port Chester." (JA76) The Mayor, John Branca, participated in picketing demonstrations against the topless club and testified at the hearing of the zoning board that LaTrieste's application for a waiver should be denied because the establishment is near a residential neighborhood and the "use of this establishment is not the correct use in the Village of Port Chester." (JA78, 101) A building and fire department inspector conducting an inspection, when asked why the village had begun to impose the 10 p.m. restriction, responded that the village did not want a topless establishment. (JA82, 94)

The Supreme Court has held that "nude dancing ... is expressive conduct within the

outer perimeters of the First Amendment, though ... only marginally so." *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 566, 111 S.Ct. 2456, 2460, 115 L.Ed.2d 504 (1991). The New York Court of Appeals has held that topless dancing is protected under the New York Constitution, *Bellanca v. New York State Liquor Auth.*, 54 N.Y.2d 228, 445 N.Y.S.2d 87, 429 N.E.2d 765 (1981), *cert. denied*, 456 U.S. 1006, 102 S.Ct. 2296, 73 L.Ed.2d 1300 (1982). LaTrieste has raised a question of fact as to whether "selective treatment was based on impermissible considerations such as ... [an] intent to inhibit or punish the exercise of constitutional rights," *LeClair*, 627 F.2d at 609.

Judge Brieant's second ruling was that because the variance at issue had already been validated in LaTrieste's Article 78 proceeding, LaTrieste was precluded from bringing this suit.

■ In our view, Latrieste's present action is so substantially different from its prior suit under Article 78 that it is not precluded. The present suit rests on different facts; it is directed against different defendants, proceeds under a different theory of law, and seeks different relief. Notwithstanding that the action has certain points in common with the earlier suit, including that both sought to free LaTrieste from the 10 p.m. restriction, it is not barred.

The Article 78 proceeding was brought only against Port Chester's zoning board, and sought only to reverse its decision on Latrieste's application to eliminate the 10 p.m. restriction from its variance. The present suit is brought against several other town officials—the mayor, the police chief, and two building inspectors who were not named in the earlier suit—and complains that they engaged in a pattern of harassment and discriminatory enforcement of numerous laws. These allegations were not a part of the earlier suit. Also, to some extent this action depends on facts that had not yet occurred when the evidence was submitted in the prior suit.

It is true that the complaint does once again name the members of the zoning board as defendants. Under the rule of *issue preclusion, see Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414–15, 66 L.Ed.2d 308 (1980), LaTrieste is precluded from relitigating the issue of the lawfulness of the zoning board's refusal to lift the restriction. However, Latrieste's complaint does not seek to do so. Indeed, it seeks no relief against the zoning board.

■ Under *claim preclusion*, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Id.* The question is whether LaTrieste "could" have raised in the earlier state action all of the claims now before us.[3] As we recently noted in another case involving New York law, "Our analysis is governed by New York State law, which has adopted a transactional approach to res judicata, barring a later claim *arising out of the same factual grouping* as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief. *See, e.g., Smith v. Russell Sage College*, 54 N.Y.2d 185, 445 N.Y.S.2d 68, 71, 429 N.E.2d 746 [749] (1981)." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994) (emphasis added).

The alleged harassment of LaTrieste and the alleged discriminatory enforcement of various laws, including the town's zoning classification, do not arise from the same set of facts, and do not even involve the same actors, as the zoning board's rejection of LaTrieste's petition to alter the terms of its variance. The new suit depends on allegations of summonses, violations, fines, arrests, and selective discriminatory treatment that were not involved in the Article 78 allegations, and that were committed by persons who were not parties to the Article 78 proceeding. LaTrieste could not have raised these claims in its Article 78 proceeding without adding additional parties and transforming the focus of its factual allegations. Ac-

---

**3.** "Under the Constitution's Full Faith and Credit Clause, *see* U.S. Const. Art. IV § 1, federal courts must accord state court judgments the same pre-clusive effect as other courts within that state." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).

cordingly, we conclude that the assertion of these claims in this action is not barred.[4]

### Conclusion

Because LaTrieste has raised material issues of fact as to whether the defendants are impermissibly engaging in harassment and selective discriminatory enforcement of the laws, designed to prevent LaTrieste's exercise of First Amendment rights, and because this action is not barred by LaTrieste's prior action against the Port Chester Zoning Board of Appeals, summary judgment was not proper. We therefore vacate the judgment entered in the district court and remand for further proceedings.

---

4. Plaintiff had brought another action in the New York State courts to bar picketers from blocking access to its premises. That action does not preclude this one for the same kinds of reasons given above. Although the mayor was a party to both actions, he was named in the earlier suit by reason of his participation in the picketing, not because of his conduct as a government official. Neither the police chief nor the building inspectors were named in the previous action, and, furthermore, the subject matter of the action, obstructive picketing by town residents, does not arise from the same "factual grouping" as the alleged selective and discriminatory enforcement of laws by town officials involved in this action.