188 F.3d 65 (2nd Cir. 1999)
 LATRIESTE RESTAURANT, Restaurant and Cabaret Inc., doing business as The Diamond Club and THE DIAMOND CLUB, Plaintiffs-Appellees-Cross-Appellants,
DOMENICK TAMARRO, JAMES SAVAGE, CHRISTINE KORFF, MICHAEL ANTAKI, THOMAS CERUZZI, JANUSZ RICHARDS, ZONING BOARD OF THE VILLAGE OF PORT CHESTER, and GEORGE O'HANLON, Defendants,
v.
VILLAGE OF PORT CHESTER, JOHN BRANCA, ANTHONY FONTANA, JOHN BELFATTO and CARL VERRASTRO, Defendants-Appellants-Cross-Appellees.
 Docket Nos. 98-7233(L), 98-9073(XAP)
August Term 1998
 UNITED STATES COURT OF APPEALS
SECOND CIRCUIT
 Argued May 5, 1999
Decided Aug. 11, 1999
 
 The Village of Port Chester ("the Village") appeals from a declaratory judgment of the United States District Court for the Southern District of New York (Fox, Magistrate J.) that the Village selectively enforced a zoning restriction against LaTrieste Restaurant and Cabaret, Inc. ("LaTrieste"). LaTrieste cross-appeals the denial of its application for attorneys' fees.
 AFFIRMED in part, REVERSED in part.
 GERALD PADIAN, Tashjian & Padian, New York, NY, for Plaintiffs-Appellees-Cross-Appellants.
 GREGG D. MINKIN, Joseph A. Maria, P.C., White Plains, NY (George O'Hanlon, Port Chester, NY, of counsel), for Defendants-Appellants-Cross Appellees.
 Before: McLAUGHLIN, LEVAL, MICHEL,*. Circuit Judges.
 McLAUGHLIN, Circuit Judge:
 
 BACKGROUND
 
 1
 LaTrieste operates the "Diamond Club," a topless bar in the Village. Although the Diamond Club is located in a zone where live entertainment is prohibited, the site actually occupied by the Diamond Club is exempt from this restriction as a result of a use variance. Under the terms of the variance, live music, dancing, and other cabaret entertainment are permitted only after 10:00 p.m. This time limitation is the crux of this litigation.
 
 
 2
 The use variance was first obtained in 1989 by a previous occupant of the Diamond Club's premises, "The Upper Deck." The Upper Deck later changed its name to "Pacifics." There is no question that Pacifics violated the zoning restriction by offering cabaret entertainment before 10:00 p.m. However, the Village took no action. Pacifics closed in 1991.
 
 
 3
 LaTrieste leased the premises in February 1992. Four months later, it opened an Italian restaurant (the "Restaurant") offering live music. In a letter to the Village Clerk following discussions about the Restaurant's cabaret license, Vincent Sorrano, one of LaTrieste's owners, stated that the Restaurant would abide by the 10:00 p.m. restriction. Nevertheless, the Restaurant violated the restriction on weekends by commencing live music between 7:00 p.m. and 9:00 p.m. on Friday and Saturday nights. The Village took no action against the Restaurant. In March 1993, the Restaurant closed.
 
 
 4
 On May 13, 1993, LaTrieste re-opened as a sports bar providing topless entertainment. Now renamed the "Diamond Club," it attracted strong public opposition in the Village. During the summer of 1993, John Branca, the Mayor of the Village, personally picketed the Diamond Club and made statements to his constituents that he opposed topless dancing establishments. He stated, for example, that "all the resources of the Village of Port Chester will be used to legally stop the topless bar use in any establishment in the Village."
 
 
 5
 Like its predecessors, the Diamond Club violated the zoning restriction by featuring topless dancing before 10:00 p.m. on its very opening night. The Village issued a notice of violation, warning LaTrieste that it would lose its certificate of occupancy if it continued to flout the 10:00 p.m. restriction.
 
 
 6
 LaTrieste then petitioned the Zoning Board of Adjustment (the "Board") for a new variance allowing it to provide topless dancing before 10:00 p.m. The petition drew major flak from the public. The Board rejected the petition as untimely. In September 1993, LaTrieste commenced a proceeding in the New York State Supreme Court challenging the Board's decision under Article 78 of the Civil Practice Law and Rules. This challenge ultimately failed in February 1994.
 
 
 7
 LaTrieste continued to ignore the 10:00 p.m. restriction during the summer of 1993. The club temporarily began to observe the restriction in late summer 1993 (around the time it commenced its Article 78 proceeding). In late 1993 or early 1994, however, LaTrieste resumed violating the 10:00 p.m. restriction. The Village responded with additional notices of violation, warning LaTrieste that it would lose its certificate of occupancy if it continued to provide live entertainment before 10:00 p.m.
 
 
 8
 On January 18, 1994, while its Article 78 proceeding was still pending, LaTrieste commenced the instant action against the Village under 42 U.S.C. § 1983 in the United States District Court for the Southern District of New York (Brieant, J.). LaTrieste alleged that the Village violated its federal constitutional right to equal protection by selectively enforcing the 10:00 p.m. restriction with the intent to inhibit or punish the exercise of LaTrieste's First Amendment right to show topless dancing. The complaint sought, inter alia, declaratory relief, as well as preliminary and permanent injunctive relief prohibiting the Village from enforcing the 10:00 p.m. restriction against the Diamond Club.
 
 
 9
 The parties settled the preliminary injunction application when the Village agreed temporarily to refrain from enforcing the 10:00 p.m. restriction until the resolution of the then-pending Article 78 proceeding. As a result of several similar settlements at various stages of the instant litigation, the Village renewed its temporary agreements not to enforce the restriction against LaTrieste through March 1996.
 
 
 10
 In April 1994, the district court granted summary judgment to the Village on two grounds. First, it found that the Village did not forfeit the right to enforce its zoning restriction through continued prior failures to enforce it. Second, it concluded that LaTrieste was collaterally estopped from relitigating issues it could have raised in the state Article 78 proceeding.
 
 
 11
 On an earlier appeal, this Court vacated the district court's ruling. See LaTrieste Restaurant & Cabaret, Inc. v. Village of Port Chester, 40 F.3d 587, 592 (2d Cir. 1994). We rejected the district court's conclusion that the Article 78 proceeding barred the federal court action. We also held that there were genuine issues of material fact as to whether the Village had selectively enforced the 10:00 p.m. restriction against the Diamond Club in order to punish or inhibit LaTrieste's constitutionally protected expression. Id.at 590-91. In reaching our decision, we emphasized the record evidence that the Diamond Club's predecessors had violated the 10:00 p.m. restriction with the "full knowledge" of the Village officials and that the Village had not enforced the restriction until the Diamond Club began to exhibit topless dancing. Id. at 588-89 & n.1.
 
 
 12
 On remand, the parties consented to a bench trial before Magistrate Judge Fox. It was undisputed that the previous occupants of the Diamond Club site had violated the same 10:00 p.m. restriction. The Village denied, however, that it knew of these prior violations.
 
 
 13
 To show that the Village did know about the violations, Vincent Soranno, one of LaTrieste's owners, testified that the Restaurant had advertised live music with start times before 10:00 p.m. and that he had actually seen certain Village officials in the Restaurant while live bands were performing before 10:00 p.m. However, the magistrate judge found Sorrano's testimony vague and not credible. The magistrate judge concluded that LaTrieste had failed to prove that the Village knew about the violations by the Restaurant or by any previous occupants of the premises.
 
 
 14
 Despite this finding of lack of knowledge, the magistrate judge concluded that the Village had selectively enforced the restriction against the Diamond Club. First, he found that LaTrieste had proved that the Village selectively treated the Diamond Club when compared to other similarly situated establishments. He rejected the Village's argument that a finding of selective treatment required proof that the Village knew about other violations of the 10:00 p.m. restriction. He found that under the circumstances, proof of knowledge was not required because he was satisfied that the Village intended to use a dormant restriction to punish LaTrieste for its constitutionally protected expression. Second, the magistrate judge found that the Village had acted with discriminatory intent during the summer of 1993, when Mayor Branca spoke out against topless dancing.
 
 
 15
 Accordingly, the magistrate judge granted LaTrieste a declaratory judgment that the Village had selectively enforced the 10:00 p.m. restriction from May 1993 to late summer 1993. However, he denied LaTrieste's request for injunctive relief, finding that the constitutional violation was not likely to recur, given the fact that Mayor Branca was no longer in office.
 
 
 16
 LaTrieste subsequently applied for an award of approximately $215,000 in attorneys' fees pursuant to 42 U.S.C. § 1988, claiming that it was a "prevailing party" under the statute. It argued that it was a prevailing party as a result of: (1) the grant of a declaratory judgment; and (2) the successful temporary settlements of its various injunction applications. The magistrate judge denied the fee application, holding that LaTrieste was not a "prevailing party" because: (1) the declaratory judgment did not alter the parties' legal relationship; and (2) the temporary settlements of the injunction applications did not constitute relief on the merits.
 
 
 17
 The Village now appeals the grant of the declaratory judgment to LaTrieste. LaTrieste cross-appeals the magistrate judge's decision denying its attorneys' fees application.
 
 DISCUSSION
 I. Selective Enforcement
 
 18
 On appeal from a bench trial, the district court's findings of fact are reviewed for clear error and its conclusions of law are reviewed de novo. See LoPresti v. Terwilliger, 126 F.3d 34, 39 (2d Cir. 1997).
 
 
 19
 The Village maintains that the magistrate judge erred in finding selective enforcement for two reasons: (1) because it failed to show that the Village knew about violations of the 10:00 p.m. restriction before the Diamond Club began featuring topless dancing, LaTrieste did not establish that it was selectively treated; (2) LaTrieste did not establish that the Village intended to punish LaTrieste's constitutionally protected expression because a "substantial portion" of the conduct taking place at the Diamond Club was not protected by the First Amendment. Because we agree with the first argument that LaTrieste failed to establish selective treatment we need not address the Village's second argument.
 
 
 20
 The Equal Protection Clause of the Fourteenth Amendment is "essentially a direction that all persons similarly situated be treated alike." City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985). "In order to establish a violation of equal protection based on selective enforcement, the plaintiff must ordinarily show (1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as . . . intent to inhibit or punish the exercise of constitutional rights." Lisa's Party City, Inc. v. Town of Henrietta, 185 F.3d 12, 15-17 (2d Cir.1999)(quotations and citations omitted).
 
 
 21
 LaTrieste failed to establish the first element of its selective enforcement claim -- that the Village selectively treated the Diamond Club when compared to similarly situated establishments. While there is no doubt that the previous occupants of the premises violated the zoning restriction and that the Village did not enforce the restriction against them, LaTrieste failed to show that the Village knew about these violations. Absent such proof, LaTrieste would be hard-pressed to show that it was singled out for selective treatment. See United States v. Fares, 978 F.2d 52, 60 (2d Cir. 1992) (rejecting criminal selective prosecution claim because defendant failed to introduce "evidence as to large numbers of similarly situated persons known to the government"); see also Oyler v. Boles, 368 U.S. 448, 456 (1962); Shumway v. UPS, 118 F.3d 60, 64-65 (2d Cir. 1997).
 
 
 22
 The magistrate judge apparently concluded that knowledge of other violations was not essential and was relevant only as some evidence of the second element of a selective enforcement claim: the Village's discriminatory purpose. If that was his position, we disavow it. A plaintiff generally must satisfy both elements to establish a claim of selective enforcement, see Zahra v. Town of Southold, 48 F.3d 674, 684 (2d Cir. 1995), and knowledge is ordinarily required to establish the first element.[1] Thus, even assuming that the conduct and statements of Mayor Branca reveal the Village's opposition to LaTrieste's constitutionally protected expression, LaTrieste ordinarily cannot establish an equal protection violation unless it shows that the Village consciously applied a different standard of enforcement to similarly situated establishments. See McCleskey v. Kemp, 481 U.S. 279, 292-93 (1987) (part of Equal Protection challenge is proof that "purposeful discrimination 'had a discriminatory effect'") (quoting Wayte v. United States, 470 U.S. 598, 608 (1985)).
 
 
 23
 LaTrieste asserts that selective treatment is established simply by demonstrating that the zoning restriction was not enforced against the Diamond Club's predecessors -- and this without regard to whether the Village knew about the other violations. However, "[m]ere failure to prosecute other offenders is not a basis for a finding of denial of equal protection." LeClair v. Saunders, 627 F.2d 606, 608 (2d Cir. 1980). Instead, "selective prosecution implies that a selection has taken place." United States v. Armstrong, 517 U.S. 456, 469 (1996) (internal quotations and alterations omitted). Absent a showing that the Village knew of other violations, but declined to prosecute them, LaTrieste would ordinarily be unable to show that it was treated selectively. See id. at 470.
 
 
 24
 Contrary to LaTrieste's assertions, we did not suggest in the earlier appeal by LaTrieste that selective treatment could be established even if the Village did not know that other establishments had violated the restriction. To the contrary, we specifically pointed out that the record contained some evidence that previous occupants violated the 10:00 p.m. restriction with the "full knowledge" of Village officials. Latrieste, 40 F.3d at 588 & n.1. After presiding over trial, however, the magistrate judge explicitly found that LaTrieste had failed to introduce credible evidence of such knowledge. LaTrieste does not challenge this finding on appeal. Because the Village did not know about any other violations of the 10:00 p.m. restriction, and LaTrieste has pointed to no alternative proof of discriminatory enforcement, the magistrate judge's conclusion that the Village selectively treated similarly situated establishments cannot stand.
 
 
 25
 Accordingly, the declaratory judgment in favor of LaTrieste is reversed.
 
 II. Attorneys' Fees
 
 26
 The decision to grant or deny an application for attorneys' fees is reviewed for an abuse of discretion. See LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 757 (2d Cir. 1998).
 
 
 27
 To be eligible for attorneys' fees, a civil rights plaintiff must be a "prevailing party." 42 U.S.C. § 1988(b). To qualify as a prevailing party, the "plaintiff must obtain at least some relief on the merits of his claim." Farrar v. Hobby, 506 U.S. 103, 111 (1992).
 
 
 28
 LaTrieste argues that it is a prevailing party as a result of: (1) the declaratory judgment; and (2) the favorable settlements of its various injunction applications. Given our reversal of the declaratory judgment, LaTrieste's first argument cannot provide a basis for finding LaTrieste a prevailing party.
 
 
 29
 We also reject LaTrieste's second argument -- that its temporary settlements of the injunction applications render it a prevailing party. Although a party can sometimes attain "prevailing party" status by obtaining temporary relief, it can do so only when the decision to grant such relief is on the merits. See Haley v. Pataki, 106 F.3d 478, 483 (2d Cir. 1997). We consider the Village's temporary agreements not to enforce the 10:00 p.m. restriction "mere procedural maintenance[s] of the status quo," LaRouche v. Kezer, 20 F.3d 68, 72 (2d Cir. 1994) (quoting Webster v. Sowders, 846 F.2d 1032, 1036 (6th Cir. 1988)), rather than relief on the merits. The magistrate judge properly denied attorneys' fees.
 
 CONCLUSION
 
 30
 We have considered the parties' remaining contentions and find them to be without merit. The declaratory judgment in favor of LaTrieste is reversed. The district court's denial of attorneys' fees is affirmed.
 
 
 
 Notes:
 
 
 *
 The Honorable Paul R. Michel, of the United States Court of Appeals for the Federal Circuit, sitting by designation.
 
 
 [1]
 We do not hold that knowledge will be required in every case. It is conceivable that selective treatment could be shown where, for example, proof was offered that a municipality did not know of prior violations because it adhered to a see-no-evil policy of not enforcing an ordinance, and then abandoned that policy with respect to a violator engaged in protected activity. In this case, however, LaTrieste has not explicitly called our attention to proof supporting this, or any other such alternative theory of selective treatment. Accordingly, any such alternative arguments are waived. See Norton v. Sam's Club, 145 F.3d 114, 117 (2d Cir. 1998).