**Elbert ZEIGLER, Plaintiff,**

v.

**TOWN OF KENT, Kent Planning & Zoning Commission, Betsy Eaton, Margaret McAvoy, Cyril H. Moore, Jr., Jesse Klingbiel, John Johnson, and Marjorie A. Vreeland, Defendants.**

No. 3:00CV1117(GLG).

United States District Court, D. Connecticut.

April 27, 2003.

George C. Springer, Jr., Butler, Norris & Gold, Hartford, CT, for plaintiff.

Thomas R. Gerarde, Beatrice S. Jordan, Alexandria L. Voccio, Howd & Ludorf, Hartford, CT, for defendants.

## OPINION

GOETTEL, District Judge.

Plaintiff Elbert Zeigler has brought this action pursuant to 42 U.S.C. § 1983 against the Town of Kent, its Planning and Zoning Commission, and the individual members of the Commission, alleging that certain conditions imposed on a zoning permit for his automobile body shop violated his constitutional rights under the Equal Protection and Due Process Clauses of the Fourteenth Amendment. Defendants have moved for summary judgment [Doc. # 33]. For the reasons set forth below, their motion will be granted.

1. Plaintiff has operated Bulls Bridge Body Shop at the 235 Kent Road location since 1997. For five years prior thereto, it was operated at another location in Kent, 337 Kent Road, where plaintiff continues to have an automotive repair business, now limited to car detailing. (Pl.'s Dep. at 21.) Plaintiff decided to move his auto body shop because it was becoming successful and he needed more room. (Pl.'s Dep. at 21–22.)

2. In opposition to the motion for summary judgment, plaintiff asserts that "town records indicate that [the] property was commercially zoned," (Pl.'s Mem. at 21), but he has offered no evidence to support this claim other than a permit *application* from 1978. Everything else in the record indicates that the zoning was rural residential, (*see* Wick Aff. and all Comm'r Affs. at ¶ 6), including the zoning

## Background

This dispute concerns an .878–acre parcel of land located at 235 Kent Road in Kent, Connecticut, (the "property"), where plaintiff operates an automotive repair business, Bulls Bridge Body Shop.[1] The property is located within a rural residential zone [2] and on a designated State Scenic Highway (Route 7), which is the main road running north-south through the Town of Kent. (Wick Aff. ¶¶ 6, 7.) The property contains two buildings: a 1,040–square-foot, single-family residence and a 2,584–square-foot pre-existing, non-conforming,[3] concrete block building, which over the years has housed various industrial and commercial businesses, including a boat-building, repair and sales business; a welding shop; a woodworking shop; a kerosene heater business; and, most recently, a fiberglass fabrication shop. (Pl.'s Am. Comp. ¶ 20; Pl.'s Ex. G; Wick Aff. ¶ 8; Defs.' Ex. O; Pl.'s Dep. at 49–50.)

On April 8, 1996, plaintiff, who had contracted to buy this property (contingent upon his obtaining the necessary permits to allow him to operate his auto body shop), and the Executrix of the Estate of Gertrude Hays, record owner of the prop-

map of the Town of Kent. (Defs.' Reply Ex. G.) Indeed, even the May 7, 1996 application for a change in use submitted on behalf of the prior owner described the property as located in a rural residential zone. (Defs.'s Ex. O.) We find no issue of fact in this regard.

3. The Zoning Regulations (June 1, 1995) applicable to rural residential properties require minimum one-acre lots and permit the following uses: residential dwellings, agricultural, forestry, gardening, cemeteries, parks or playgrounds. (Defs.' Ex. E at §§ 6.1, 6.3.) Special permits may be obtained for additional uses enumerated in § 6.2, none of which are applicable here. The building at issue was constructed in 1960, and was rendered nonconforming under the 1965 Zoning Regulations by virtue of its location in a rural residential zone.

erty, sought a permit from the Kent Planning and Zoning Commission for a change in the prior non-conforming use from "Manufacture of fiberglass, models and sculptural materials" to "Auto Body Shop." [4] (Defs.' Ex. A.) After encountering opposition from some of the neighbors, the agent for the Estate of Gertrude Hays, with plaintiff's consent, wrote the Commission suggesting that four conditions could be placed on the issuance of the permit to allay concerns about excessive noise: vehicles awaiting repair would be kept at the rear of the building in a screened area; a picket fence would be installed at the front of the property to soften the industrial aspects of the building; a six-foot stockade fence would be installed south of the building to screen it from the view of the nearest neighbor; and the facility would be in full compliance with State regulations imposed on auto body repair shops. (Defs.' Ex. O; Defs.' 9(c)1 St. at ¶¶ 8, 10 (admitted by plaintiff).) Following a public hearing, the permit was denied on May 13, 1996, on the ground that the Commission viewed the proposed change in use as an expansion of the prior non-conforming use. (Eaton Aff. ¶ 12; Defs.' Ex. A; Defs.' 9(c)1 St. ¶ 12 (admitted by plaintiff).) [5]

On August 31, 1996, plaintiff acquired a leasehold interest in the commercial building located on the property. (Pl.'s Am. Comp. ¶ 25.) On March 20, 1997, plaintiff again sought a permit from the Commission for a change in non-conforming use from "Industrial (fiberglass and sheet metal fabrication and painting)" to "Commercial (autobody shop)." (Defs.' Ex. B.) In his application, plaintiff suggested a number of conditions that could be imposed on the permit, in addition to those proposed with the earlier application, including the careful landscaping of flowers and shrubs, "no 'junk cars,' surplus parts, damaged customer cars, or any other unattractive situations to spoil the existing community," and a condition relating to signage, which is not relevant here. (Defs.' Ex. P; Defs.' 9(c)1 St. ¶ 14 (admitted by plaintiff).) A

---

4. This change in use was sought pursuant to the Zoning Regulations for the Town of Kent (June 1, 1995), which provides in relevant part:

> 14.3 *NON–CONFORMING USES*. Where a lawful use exists at the effective date of adoption or amendment of these Regulations which use is no longer permitted under these Regulations as adopted or amended, such use may be continued so long as it remains otherwise lawful, subject to the following provisions:
>
> 14.3.4 Such non-conforming use may be changed to another non-conforming use by the Commission following a public hearing. In approving such a change, the Commission shall find that the proposed use is equally appropriate or more appropriate to the district than the existing non-conforming use. *In permitting such a change, the Commission may attach such conditions and safeguards as may be required to protect the public health, safety and general welfare and to ensure continued compliance with these Regulations. Such conditions and safe-*

*guards may include, but shall not be limited to: a maximum number of employees, hours of operations or improvements to existing public facilities to accommodate the proposed use.*
(Emphasis added).

5. See also *Dumoff v. Zoning Board of Appeals of the Town of Kent*, No. CV 960071522, 1997 WL 35813 (Conn.Super.Jan.24, 1997) (describing the history of plaintiff's permit application). Plaintiff filed an appeal to the Zoning Board of Appeals of Kent, which overturned the Commission's decision. That decision was then appealed by an aggrieved party, Dumoff, to the Superior Court, which held that the Board had exceeded its powers in overruling the decision of the Commission because it was, in essence, holding a new hearing on a request for a variance, as opposed to reviewing the finding of the Commission based on the record. *Dumoff*, 1997 WL 35813, at *5. Thus, the decision of the Board was overturned and the decision of the Commission reinstated. *Id.; see also* Pl.'s Am. Comp. ¶¶ 23–25.

public hearing was then held on this application, at which plaintiff's counsel gave a history of the uses of the commercial building on the property and offered a comparison between the operations of the prior non-conforming business, the fiberglass manufacturing shop, and plaintiff's auto body shop, in an attempt to demonstrate that plaintiff's business would be less hazardous to the environment and health. (Defs.'s Ex. Q.) He represented that plaintiff would be a "resident operator" (Defs.' Ex. Q; Defs.' 9(c)1 St. ¶ 15 (admitted by plaintiff)), and proposed some conditions that plaintiff would be willing to have imposed on his business. (Defs.' Ex. Q.) Several other members of the community spoke in favor of allowing plaintiff's auto body shop to operate there, but one adjoining property owner, Larry Dumoff,[6] opposed the application, expressing concerns about the appropriateness of the location for an auto body shop on a rural and scenic route, as well as potential parking problems. (*Id.*)

Thereafter, a special meeting of the Commission was held, at which plaintiff was present but was not allowed to participate. (Pl.'s Am. Comp. ¶¶ 31–33; Defs.' Reply Ex. B.) At that meeting, the Commissioners discussed the conditions to be imposed on plaintiff's permit, in particular, the issues of parking, hours of operation, and landscaping. Commissioner Moore also expressed his disagreement with the proposed use of the property. He considered it an expansion of the prior non-conforming use and he was also concerned about the frequency of use of the property compared to prior businesses. (Defs.' Reply Ex. B at 18.)

Ultimately, plaintiff's permit was granted by the Commission on June 18, 1997, with ten conditions imposed, which exceeded those proposed by plaintiff. (Defs.' Ex. C & Defs.' Reply Ex. B.) Plaintiff seeks

redress in this action only with respect to the following five conditions:

1. The approved use shall be allowed between the hours of 8 a.m. and 6 p.m. on Monday through Friday, 8 a.m. and 2 p.m. on Saturday, and shall not be allowed on Sunday.

3. The owner and operator of the facility shall permanently reside in the single family residence located on the premises as long as the facility is operated.

6. No more than seven (7) vehicles associated with the business shall be parked externally, of which no more than four (4) shall be parked on the existing blacktop.

7. Prior to the issuance of the permit a landscaping site plan must be approved by the commission which shall be fully implemented by the owner/operator within 90 days after the permit has been issued. Such plan shall be adhered to during the life of the said permit and will include but not be limited to:

a) screening of the driveway parking area along the south side of the drive from the property to the edge of the building.

b) the planting of an evergreen hedge row along the southern property line.

c) a cash bond in the amount of $3,500.00 to be posted with the Town of Kent upon approval of the landscaping site plan.

8. The total number of employees is limited to two (2) persons employed on the premises in connection with the non-conforming use only.

(Defs.' Ex. C & Pl.'s Am. Comp. ¶ 33.)

Thereafter, plaintiff sought reconsideration by the Commission, arguing that the prior uses of the property had been unregulated with respect to the number of em-

---

6. *See* Note 5, *supra.*

ployees, hours of operation, and number of cars allowed to be parked on the paved parking areas, and previous tenants were not required to landscape the property. In his request for reconsideration, plaintiff proposed the following modifications:

1. Hours of Operation: If there could be some provision for me to work after business hours when the volume of work requires it, I would stipulate that this work would be limited to hand work and would generate NO noise of any other potential offenses.

2. Landscaping: I would prefer to invest the money in an evergreen screen along the southern boundary and other cosmetic projects to enhance and beautify the property . . . .

3. Employees: The building has six working bays. I would like to be able to have an employee for two bays each of a total of three employees for the permitted use.

4. Residence in House: I have stipulated that I will be a resident operator. Must it be mandated of me by the Commission that I must remain a resident owner by law? Perhaps an assigned number of years such as six to eight years may serve your purpose.

(Defs.'s Ex. R.) Those requests were denied. (Pl.'s Am. Comp. ¶ 35.)

Plaintiff, nevertheless, went forward with the purchase of the property, acquiring title on or about October 15, 1997. On December 2, 1997, the Commission issued to plaintiff a permit consistent with its June 18th decision.

Plaintiff then filed the instant lawsuit, alleging that his constitutional rights had been violated by virtue of the conditions imposed on the permit issued by the Commission. More specifically, he asserts that his rights under the Equal Protection Clause of the Fourteenth Amendment were violated in that he was selectively treated as compared with others similarly situated, and that such selective treatment was based upon impermissible considerations including plaintiff's race, African–American, and defendants' desire to inhibit plaintiff from gainfully pursuing his vocation. (Pl.'s Am. Comp. ¶ 49.) Plaintiff maintains that it is not economically feasible for him to operate his auto body shop with the conditions that have been attached, including his inability to rent the residence. He further alleges that he was denied substantive due process in that defendants' conduct lacked a rational basis and was arbitrary and capricious. (Pl.'s Am. Comp. ¶¶ 51–52.)

### Summary Judgment Standard

The standard for reviewing summary judgment motions is well-established. A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The burden of establishing that there is no genuine factual dispute rests with the moving party. *See Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223 (2d Cir.1994). In ruling on a motion for summary judgment, the Court must resolve all ambiguities and draw all reasonable inferences in favor of plaintiff, as the non-moving party. *Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). At the same time, when a motion is made and supported as provided in Rule 56, Fed.R.Civ.P., the non-moving party may not rest upon mere allegations or denials of the moving party's pleadings, but instead must set forth specific facts showing that there is a genuine issue for trial. Rule 56(e), Fed.R.Civ.P. In other words, the non-moving party must offer such proof as would allow a reason-

able jury to return a verdict in his favor. *Anderson v. Liberty Lobby,* 477 U.S. at 256, 106 S.Ct. 2505; *Graham v. Long Island R.R.,* 230 F.3d 34, 38 (2d Cir.2000). This Court's "function at this stage is to identify issues to be tried, not decide them." *Graham,* 230 F.3d at 38. "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci,* 923 F.2d 979, 982 (2d Cir.), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

At the same time, in the context of land use and zoning cases, the Second Circuit has cautioned that federal courts do not sit as zoning boards of appeal to review non-constitutional land-use determinations by local legislative and administrative agencies. *See Harlen Associates v. Incorporated Village of Mineola,* 273 F.3d 494, 502 (2d Cir.2001); *Crowley v. Courville,* 76 F.3d 47, 52 (2d Cir.1996). Thus, the Court has held that to the extent a plaintiff's complaint addresses the merits of the state or local agency's decision rather than its constitutionality, it is better raised in a state court challenge. *Harlen Assocs.,* 273 F.3d at 502. "Local zoning boards, subject to direct oversight by state courts, are in a far better position than are the federal courts to balance the needs of their communities with those of individuals seeking development." *Id.*

### Discussion

Defendants assert that plaintiff cannot, as a matter of law, establish a claim for a denial of equal protection because he cannot establish that he was selectively treated as compared to others similarly situated or that his allegedly different treatment was based upon his race, malice or an intent to injure him. Defendants argue that plaintiff cannot establish a due process violation because he did not have a federally protectable property interest in the permit and he cannot establish that

defendants acted in an arbitrary or irrational manner in depriving him of that interest. Additionally, the Town of Kent asserts that it cannot be held liable to plaintiff because he cannot show that the alleged violation of his constitutional rights was the result of a municipal custom or policy. Finally, the individual Commission members raise a defense of qualified immunity.

### *I. Plaintiff's Equal Protection Claim*

A violation of equal protection by selective enforcement arises if: (1) the person, compared with others similarly situated, was selectively treated; and (2) such selective treatment was based upon impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person. *LaTrieste Restaurant & Cabaret, Inc. v. Village of Port Chester,* 40 F.3d 587, 590 (2d Cir.1994) (internal citations and quotation marks omitted). "Although the prototypical equal protection claim involves discrimination against people based on their membership in a vulnerable class, we have long recognized that the equal protection guarantee also extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials." *Harlen Assocs.,* 273 F.3d at 499.

In the instant case, plaintiff concedes that defendants were empowered by the Zoning Regulations to attach conditions to any change in use as may be required to protect the public health, safety, and moral welfare of the community. (Pl.'s Am. Comp. ¶ 17.) Nevertheless, he challenges the conditions prescribed by the Commission as selectively imposed based upon his race, African–American, as well as defendants' malicious and bad faith intent to injure him by depriving him of the ability to earn a living.

## A. Selective Treatment

Defendants first argue that plaintiff's equal protection claim must fail in that he has failed to carry his burden of proving that others similarly situated were treated differently. More specifically, defendants assert that other than one business, there are no other similarly situated businesses, and the one business that had a similar status, Moore Power Equipment Sales, was not treated differently.

Moore Power Equipment Sales, a retail business that sold and serviced power equipment from 1999 to 2001, was located at 29 Kent Road, in a rural residential zone and on the same State Scenic Highway as plaintiff's property. The property is owned by Aline Paugh and contains a single-family residence, in which Ms. Paugh resides, as well as a non-conforming building used for a pre-existing, non-conforming use, i.e., power equipment sales and service. Defendants state that, like plaintiff's auto body shop, conditions and restrictions were imposed on the power equipment business, including hours of operation, outside storage, and environmental reporting. (Wick Aff. ¶¶ 12–16; Defs.' Ex. F.) These conditions, however, were not the same or as restrictive as those imposed on plaintiff. (*Compare* Defs.' Ex. F *with* Defs.' Ex. C.)[7]

Plaintiff cites to the other auto body shops in Kent, which do not have restrictions on their hours of operation or on the number of vehicles that may be parked outside. Defendants respond that none of these are located in a rural residential zone and on a designated State Scenic Highway. (Wick Aff. ¶¶ 10–11.) For example, Beatty Automotive, cited by plaintiff, is a special permitted use in a roadside commercial zone.[8]

Plaintiff also cites to the convenience store and restaurant located just north of his property at the corner of Bulls Bridge Road and Route 7, which have large parking lots that are conspicuous to motorists traveling along Route 7, the State Scenic Highway. These businesses, however, are located within a roadside commercial zone.

Additionally, plaintiff complains that there are no restrictions on the hours of operation for any business operating in the center of Town. Defendants respond that these businesses are in a different zone, subject to different zoning regulations and permitted uses. For example, the Kent Inn, mentioned by plaintiff, is a permitted use in the Village Center commercial zone. Belgigue, a chocolate shop, and Country Corners, a home care business, cited by plaintiff, are also permitted uses in the Village Center commercial zone.

---

**7.** For example, the Conditions for Approval for the Paugh permit, which changed the nonconforming use from an art gallery to power equipment sales and service, included:
> Business hours shall be no more that 8 a.m. to 8 p.m. Monday through Saturday, and 8 a.m. to noon on Sunday.

No limitations were placed on the number of employees or parked cars. No landscaping requirements were imposed, nor was the owner required to reside on the premises.

**8.** The Zoning Regulations § 12.2 (incorporating, *inter alia*, § 8.2.5) applicable to roadside commercial zones include as a special permit use:

automotive service stations or establishments for the sale, storage and/or repair of motor vehicles, subject to a Certificate of Approval by the Kent Zoning Board of Appeals ... provided that all shall meet State requirements, and provided that no vehicle entrance or exit for such an establishment shall create a traffic ... hazard, and provided that any equipment or supplies shall be stored in buildings or property screened from adjoining properties by fence, walls or evergreen plantings.

The rural residential zoning regulations do not include automotive service stations as a special permitted use.

"As a general rule, whether items are similarly situated is a factual issue that should be submitted to a jury." *Harlen Assocs.*, 273 F.3d at 499, n. 3. "This rule is not absolute, however, and a court can properly grant summary judgment where it is clear that no reasonable jury could find the similarly situated prong met." *Id.* While we have considerable difficulty with plaintiff's argument that most of these businesses were similarly situated to plaintiff's auto body shop, we cannot state that there are no genuine issues of material fact in this regard. The one business that defendants concede had a similar status did have conditions imposed on its operation, but these conditions were not as restrictive or comprehensive as those imposed on plaintiff.

Thus, assuming plaintiff can show selective treatment, we turn to the issue of whether this selective treatment was based upon plaintiff's race or the malicious or bad faith intent to prevent plaintiff from earning a livelihood.

### B. Based on Race

Plaintiff claims that the challenged conditions were imposed upon him because of his race, African–American. He supports this claim based on the demeanor of the Commissioners, their lack of respect toward him during the hearings, and remarks that they made during the hearings. (Pl.'s Dep. at 106, 124; Pl.'s 2d Dep. at 18.) Additionally, he cites to comments made to him by other members of the community suggesting that the Commission's decision was racially motivated.

Defendants deny that their decisions were motivated in any way by plaintiff's race. They offer the identical testimony of every Commissioner that to the best of his or her knowledge plaintiff's initial permit application "was not denied due to his race" and that the conditions imposed on his second permit application "were not implemented due to his race." (*See, e.g.,* McAvoy Aff. ¶¶ 29, 31.) We give little weight to these form affidavits. It is the rare case, indeed, where a defendant would admit to having acted with racial animus.

Nevertheless, we find no evidence from which we could reasonably draw an inference of a discriminatory motive. This is not a case in which plaintiff was denied a permit altogether. Plaintiff was granted the requested permit for the change in non-conforming use, although he now challenges some of the conditions attached as selectively imposed because of his race. One of those conditions is that plaintiff permanently reside on the premises. It is difficult to understand how racial animus could be attributed to this condition. Moreover, plaintiff was not a newcomer to the Town of Kent. He owned, and continues to own, another automobile repair shop on Kent Road and, by all accounts, was a respected businessman in Kent.

A careful review of the record fails to reveal any evidence of racial animus. If anything, there was bias against an auto body shop located on a Scenic State Highway in a rural residential district,[9] but we

---

9. Commissioner Moore, Chairman of the Commission, had an admitted bias against auto body shops based on his experiences in New York. He testified:

> [U]nfortunately, I come from a background where body shops are not the most favored occupation in the world. One of the most unpleasant occupations in the city of New York are [sic] body shops because many of them are what they call chop shops, and a chop shop is not an organization that I would care to have anywhere around the town of Kent. And the kind of people who operate those shops are not people that I could care to operate around the town of Kent.

(Moore Dep. at 89.)

Commission Eaton (Vice Chair of the Commission) described the "overarching backdrop" as a "concern for an auto body shop

find no evidence from which a jury could reasonably infer that the Commission's decision was based on plaintiff's race.

 Plaintiff has offered evidence of one remark by Commissioner Moore, which he considered racially derogatory. However, when this remark is viewed in its proper context, we find that it does not support an inference of racial animus. According to plaintiff, Commissioner Moore stated, "Well, they could park down the street, you know, they could fly in, you know, and jump in the car, they could bus them in . . . ." (Pl.'s 2d Dep. at 14, 131–132.) Plaintiff considered this comment as racially derogatory because of the historical context of busing as a tool to achieve desegregation. Plaintiff stated that he also observed the other Commission members laughing after the comment was made, thus arguably lending credence to his interpretation of the racial connotation of this remark. (Pl.'s 2d Dep. at 132–33.)

The transcript of the hearing, however, indicates that this remark was made in the course of discussions on the number of parked cars that would be allowed at Bulls Bridge Body Shop. Commissioner McAvoy suggested that one thing that "would help the business, possibly the neighbors, if you have less employees. Big difference. That would be our way of helping to (inaudible) that situation." (Hr'g Tr. at 9.) There were some further comments and then Commissioner Moore remarked, "Well they can car pool, come in a bus, park one bus with thirty-two employees." (Hr'g Tr. at 9.) It appears that his comment, although somewhat glib, was intended to refute the earlier suggestion by McAvoy that there was a necessary correlation between the number of employees and the number of parking spaces. There is nothing to suggest any racial overtone.

To the extent that plaintiff relies on comments made to him by other members of the community, who suggested that the Commission's motivation may have been racial, these hearsay comments are nothing more than mere speculation and cannot support plaintiff's claim. Additionally, we note that plaintiff has failed to present any admissible evidence by way of sworn affidavits or otherwise concerning these comments.

 More importantly, defendants have offered reasonable explanations for each of the conditions challenged by plaintiff. Defendants assert that the hours limitations were necessary because plaintiff's business was in a residential zone, giving rise to concerns about noise and securing the quiet enjoyment of property for the neighbors. Defendants maintain that the condition requiring plaintiff's residency on the property was to ensure that the property was properly maintained. This condition was imposed only after plaintiff, on his own volition, repeatedly assured the Commission that he would be residing on the premises.

The conditions as to the maximum number of vehicles permitted to be parked on the premises were required due to the Commission's concern for the appearance of the property. This condition was implemented in accordance with section 18 of the Town's Zoning Regulations. The landscaping conditions were required, according to defendants, because plaintiff had proposed these himself and also out of

being operated in a residential zone." (Eaton Dep. at 59.) She stated that the Commissioners were aware that plaintiff had an excellent reputation in the town of Kent for a well-run business, for being a good neighbor. They were aware that any decision that was made

on this property had the potential for locking the property into continuing non-conforming use as an auto body shop and that it could be sold and that someone less conscientious than plaintiff could be operating it. (Eaton Dep. at 59.)

concern for the appearance of the property due to its location in a residential zone and on a Scenic Highway. Finally, defendants maintain that the limitation on the maximum number of employees was imposed in order to limit the size of the business in a residential zone, due to concerns about noise and in order to secure the quiet enjoyment of the property for the neighbors.

We do not suggest that we agree with all of the conditions imposed or that we would impose the same conditions if we were sitting as the Zoning Commission. But, we are not. Our only function at this point is to determine, based on the evidence in the record, whether any reasonable jury could find that plaintiff's right of equal protection was violated by defendants' selective imposition of these conditions because of plaintiff's race. Having carefully reviewed the entire record before us, we find no genuine issue of material fact in that regard.

### C. Based on a Desire to Inhibit Plaintiff from Gainfully Pursuing His Vocation

Alternatively, plaintiff asserts that these conditions were imposed by the Commission in order to inhibit his pursuit of his vocation. He argues that they were imposed without any regard for the needs of his business. Further, he points to the fact that defendants have admitted that the conditions were intended to confine the use of the property by plaintiff and subsequent users.

This latter argument begs the question. The very purpose of local zoning boards, zoning and land-use regulations is to regulate the use of property by current owners and subsequent owners. There is nothing unconstitutional in that regard.

However, that is not the sole basis for plaintiff's second equal protection challenge. Plaintiff claims that defendants intentionally acted to prevent him from earning a livelihood. As the Second Circuit recently held in *Harlen Associates,* 273 F.3d at 499, "individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials" may bring an equal protection claim. *Id.* A plaintiff may prevail on a "class of one" claim of selective enforcement if he shows that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech,* 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (per curiam); *see also African Trade & Information Center, Inc. v. Abromaitis,* 294 F.3d 355, 363 (2d Cir.2002); *Russo v. City of Hartford,* 184 F.Supp.2d 169, 190 (D.Conn. 2002); *Presnick v. Orange,* 152 F.Supp.2d 215, 224 (D.Conn.2001). Although the Second Circuit has declined to resolve the question of whether the Supreme Court's decision in *Olech* changed the requirement that malice or bad faith must be shown in order to state a valid "class of one" equal protection claim, *see Harlen Assocs.,* 273 F.3d at 499–500; *Giordano v. City of New York,* 274 F.3d 740, 750 (2d Cir.2001), the Second Circuit has made clear that a plaintiff challenging a zoning board's decision, at a minimum, would be required to show that the decision was "irrational and wholly arbitrary," *Giordano,* 274 F.3d at 750 (citing *Olech,* 528 U.S. at 565, 120 S.Ct. 1073), in other words, that there was "no legitimate reason for its decision." *Harlen Assocs.,* 273 F.3d at 500.

"The court's duty to determine whether the defendants have offered a rational basis for the difference in the defendants' treatment 'is not a license for courts to judge the wisdom, fairness, or logic of legislative choices.'" *Batiste v. City of New Haven,* 239 F.Supp.2d 213, 228 (D.Conn.2002) (quoting *FCC v. Beach Communications, Inc.,* 508 U.S. 307, 313,

113 S.Ct. 2096, 124 L.Ed.2d 211 (1993)). "Nor does it authorize 'the judiciary [to] sit as a super-legislature to judge the wisdom or desirability of legislative policy determination made in areas that neither affect fundamental rights nor proceed along suspect lines.'" *Id.* (quoting *New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976) (per curiam)). Accordingly, we are to afford governmental decisions "a strong presumption of validity," *Heller v. Doe by Doe,* 509 U.S. 312, 319, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993), and we should uphold a governmental decision if there is "any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.*

The Commissioners in this case have advanced a number of legitimate reasons for imposing the conditions on plaintiff's permit. *See* Discussion at 18, *supra.* Moreover, the Zoning Regulations themselves granted the Commission the authority to impose such conditions, including limiting the "maximum number of employees, hours of operations or improvements to existing public facilities to accommodate the proposed use." *See* Note 4, *supra.* Many of the conditions imposed were proposed by plaintiff himself as conditions he would voluntarily agree to. Moreover, as noted above, although there were other automotive repair businesses in Town, plaintiff's auto body shop was the only automotive shop located within the a rural residential zone and on a State Scenic Highway. And, although there had been one other power equipment sales business in this zone with less restrictive conditions imposed, this business was not an auto body shop, which could account for of the differences in conditions imposed. We find that defendants have proffered sufficiently legitimate, rational explanations for the conditions imposed to withstand an equal protection challenge. Therefore, we grant defendants' motion for summary judgment on plaintiff's equal protection claim.

## II. Plaintiff's Due Process Claim

Plaintiff's federal due process claim is based on the Fourteenth Amendment, as implemented by section 1983, and requires the existence of a federally protectable property right and the denial of such right in the absence of procedural or substantive due process. *Natale v. Town of Ridgefield,* 170 F.3d 258, 262 (2d Cir.1999). Here, plaintiff claims a denial of substantive due process. In such a case, plaintiff must first establish a valid property interest within the meaning of the Constitution and, second, he must demonstrate that the defendants acted in an arbitrary or irrational manner in depriving him of that interest. *Crowley,* 76 F.3d at 52.

The Second Circuit has applied a "strict entitlement test" in land use regulation cases to determine if the abridgement of an asserted property right is cognizable under the substantive component of the Due Process Clause. *DLC Mgmt. Corp. v. Town of Hyde Park,* 163 F.3d 124, 130 (2d Cir.1998). This analysis focuses on whether plaintiff had a legitimate claim of entitlement under state law to have his permit application granted without the conditions attached. *Id.; see also Natale,* 170 F.3d at 263. The entitlement inquiry focuses on the extent to which the deciding authority may exercise discretion in making its decision, rather than on an estimate of the probability that the authority will make a decision in plaintiff's favor. *Crowley,* 76 F.3d at 52. The Second Circuit has held that "[i]n almost all cases, the existence of a federally protectable property right is an issue of law for the court." *Natale,* 170 F.3d at 263.

Plaintiff has failed to establish that he had a federally protectable right to the permit without the conditions attached.

Section 14.3 of the Zoning Regulations vests the Commission with discretion to grant a change in use from one non-conforming use to another. The Regulations, § 14.3.4, provide that a non-conforming use *"may be* changed" to another non-conforming use by the Commission after a public hearing. (Emphasis added). In permitting such a change, the Commission *"may attach* such conditions and safeguards as may be required to protect the public health, safety and general welfare and to ensure continued compliance with the[ ] Regulations," including limiting the maximum number of employees, hours of operation or improvements to existing public facilities to accommodate the proposed use. *Id.* (emphasis added). In light of the discretion vested in the Commission to attach conditions and safeguards to changes in non-conforming use permits, plaintiff cannot claim that he had a legitimate claim of entitlement—that is, a constitutionally protected property interest—to the permit subject only to the conditions which he requested, or that the Commission had no discretion to alter the conditions placed on the permit. Therefore, plaintiff's due process claim must fail.

Because we find that plaintiff had no federally protectable property interest in the permit without the challenged conditions, we need not decide whether the actions of the defendants were arbitrary or irrational. In that regard, however, we note the dicta of the Second Circuit in the *Harlen Associates* case:

> The Board may or may not have made the right decision on the merits of the application, but that issue does not raise a federal question.... As we have held numerous times, substantive due process "does not forbid governmental actions that might fairly be deemed arbitrary or capricious and for that reason correctable in a state court lawsuit.... [Its] standards are violated only by conduct that is so outrageously arbitrary as to

constitute a gross abuse of governmental authority." *Natale,* 170 F.3d at 263. The activities of the Board in this case did not transgress the "outer limit" of legitimate governmental action, therefore, they do not give rise to a federal substantive due process claim.

273 F.3d at 505; *see also Crowley,* 76 F.3d at 52 (holding that such a determination can be made only when the government acts with no legitimate reason for its decision). Although we make no rulings on this issue, based on the evidence before us, we would be hard-pressed indeed to find that the Commission's actions in imposing the challenged conditions on plaintiff's permit transgressed the "outer limit" of legitimate governmental action.

Accordingly, we grant defendants' motion for summary judgment on plaintiff's due process claim, asserted in Count II of his amended complaint.

Having found that defendants' imposition of the challenged conditions on plaintiff's permit for a change in a non-conforming use did not violate his constitutional rights of equal protection and substantive due process, we need not address the merits of the remaining defenses asserted by defendants.

### Conclusion

Therefore, for the reasons discussed above, Defendants' Motion for Summary Judgment is GRANTED as to all counts of plaintiff's amended complaint. The Clerk shall enter judgment accordingly.

**SO ORDERED.**