**Bruce A. BULLOCK, Plaintiff,**

v.

**Steven GEROULD, David Egelston, Charles Johncox, Donald Snell, Robert Lucas, Stephen Rawson, Defendants.**

**No. 04–CV–6050L.**

United States District Court,
W.D. New York.

Oct. 22, 2004.

Michael P. Leone, Harris, Chesworth, O'Brien, Johnstone, Welch & Leone, Rochester, NY, for Plaintiff.

Robert A. Colon, Rochester, NY, for Defendants.

*DECISION AND ORDER*

LARIMER, District Judge.

Plaintiff, Bruce A. Bullock, an employee of the New York State Department of Environmental Conservation ("DEC"), commenced this action under 42 U.S.C. § 1983, alleging certain violations of his constitutional rights by six individuals, all of whom are (or at all relevant times were) also DEC employees. On July 1, 2004, the Court granted defendants' motion to dismiss the complaint pursuant to Fed. R.Civ.P. 12(b)(6), and granted plaintiff leave to file an amended complaint.

Plaintiff filed an amended complaint on July 20, 2004. Defendants have again moved to dismiss the complaint for failure to state a claim upon which relief can be granted.

## BACKGROUND

The amended complaint contains the following allegations, which I assume to be true for purposes of deciding defendants' motion. Plaintiff is an Environmental Conservation Officer with the DEC. On March 6, 2002, as part of his duties with the DEC's Marine Off–Road Recreational Enforcement ("MORE") unit, plaintiff was operating a DEC-owned snowmobile near Lake Ontario in the Town of Greece, New York. At about 11:15 a.m., plaintiff accidentally ran into a ditch that had been obscured by a recent snowfall. The snowmobile was damaged in the accident, and was eventually repaired at a cost of over $2300.

Later that day, defendant Chief Environmental Conservation Officer Steven Gerould was sent to inspect the accident site. He prepared a written report indicating that the ditch was not visible from a distance.

Lieutenant David Baker, who was plaintiff's superior, then prepared his own report of the accident. Baker's report included his determination, which was based in part on Gerould's observations, that plaintiff would have had less than two seconds to react once he saw the ditch.

After reading Gerould's report, defendant Assistant Director of Law Enforcement David Egelston directed defendant Environmental Conservation Investigator Charles Johncox to tell Gerould to amend his report by deleting any references to the lack of visibility of the ditch. On March 7, 2002, Johncox sent Gerould an interoffice email stating that Johncox would "prefer" that the sentences referring to the visibility of the ditch be deleted because "it would be cleaner at arbitration if we left those things unsaid." Amended Complaint ¶ 31. He also asked "that the original be purged." *Id.* ¶ 32.

Gerould complied with Johncox's requests, and in an email dated March 8, 2002, Gerould sent a new report to Baker and several other DEC employees involved in the investigation, asking that Gerould's first report be "destroyed." *Id.* ¶ 33. In response, Baker sent an email to Gerould, asking why the removed statements had been deleted. A short time later, Baker received a telephone call from defendant Donald Snell, who at the time was a Chief Environmental Conservation Officer, who told Baker that "Albany wanted to go after Plaintiff by placing the blame for the accident on Plaintiff." *Id.* ¶ 37.

Baker resisted making any changes to his report, but Snell and Gerould threatened to charge him with insubordination if he refused. Baker then removed the statements in his report about the ditch being difficult to see from a distance.

Disciplinary charges for misconduct were then brought against plaintiff, although it is not clear from the complaint exactly what the factual basis of the

charges was. Defendants sought a penalty of a six-month suspension without pay. Plaintiff also alleges that defendants hoped to use the disciplinary action as a basis to remove him from the MORE unit or to dismiss him from the DEC.

Through his union, plaintiff contested the disciplinary action, and a two-day arbitration hearing was held before the New York State Public Employment Relations Board. During that hearing, "both the State and the Union were given a full opportunity to present evidence, testimony and argument and to examine and cross-examine witnesses who were sworn." *Id.* ¶ 54.

Following the conclusion of the hearing, the arbitrator (who had been mutually selected by both the DEC and plaintiff's union, *see id.* ¶ 56) found that there was no just cause to discipline plaintiff, that plaintiff had not violated any DEC rules, and that he had not been responsible for the accident. Thus, plaintiff suffered no adverse employment action as a result of the misconduct charge. He does allege, however, that he suffered "emotional distress, physical injury, humiliation and damage to reputation" as a result of defendants' actions. *Id.* ¶ 59.

The amended complaint asserts two causes of action. The first alleges that defendants "treated Plaintiff differently by knowingly removing and/or attempting to destroy exculpatory evidence from an official report for the purpose of injuring him," thereby violating plaintiff's constitutional right to equal protection. *Id.* ¶ 61. The second cause of action alleges that plaintiff "possesses a life, liberty, or property interest in his own emotional and physical health," *id.* ¶ 68, and that defendants deprived him of that interest without due process of law.

## DISCUSSION

### I. Equal Protection Claim

 The Equal Protection Clause of the Fourteenth Amendment is "essentially a direction that all persons similarly situated be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). To state a claim for a violation of his right to equal protection, plaintiff must allege that, "compared with others similarly situated, [plaintiff] was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Freedom Holdings, Inc. v. Spitzer,* 357 F.3d 205, 234 (2d Cir.2004) (quoting *Lisa's Party City, Inc. v. Town of Henrietta,* 185 F.3d 12, 16 (2d Cir.1999)). "A plaintiff generally must satisfy both elements to establish a claim of selective enforcement ...." *LaTrieste Restaurant v. Village of Port Chester,* 188 F.3d 65, 70 (2d Cir.1999) (citing *Zahra v. Town of Southold,* 48 F.3d 674, 684 (2d Cir.1995), *cert. denied,* 528 U.S. 1187, 120 S.Ct. 1240, 146 L.Ed.2d 99 (2000)).

 Defendants contend that plaintiff's equal protection claim should be dismissed because plaintiff has failed to allege the existence of any similarly situated persons who were treated differently from plaintiff. Although it is true that the complaint does not use the actual words "similarly situated," I find that it adequately states a claim for a denial of equal protection, at least at this stage.

It is important to remember that this is not a motion for summary judgment after discovery, but a motion to dismiss pursuant to Rule 12(b)(6). In deciding a Rule 12(b)(6) motion, the Court must draw all reasonable inferences in favor of plaintiff

and accept as true all factual allegations in the complaint. "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *see also Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 515, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *Phillip v. University of Rochester,* 316 F.3d 291 (2d Cir.2003). The issue is not whether plaintiff ultimately will prevail but whether he is entitled to offer evidence to support his claims. *Swierkiewicz,* 534 U.S. at 512, 122 S.Ct. 992 (reaffirming the simplified notice pleading requirement of Fed.R.Civ.P. 8 that relies on the rules of discovery and motions for summary judgment to define factual issues and dispose of unmeritorious claims).

Applying these standards to this case, the complaint can fairly be read as alleging that other DEC officers have been the subject of accident or other investigations in which defendants participated, and that defendants did not deliberately remove exculpatory information from their reports in those investigations. The allegation that defendants "treated Plaintiff differently" can logically be understood to mean that they treated him differently from other DEC officers in similar situations.

Likewise, the complaint alleges that "[d]efendants do not routinely remove and/or attempt to destroy exculpatory evidence from an official report for the purpose of injuring a person." Amended Complaint ¶ 62. Again, it can (and therefore must, in deciding defendants' motion) be reasonably inferred from that allegation that defendants have prepared similar reports in the past about other officers, and that they did not deliberately remove or destroy exculpatory information in those instances.

This conclusion finds support in *DeMuria v. Hawkes,* 328 F.3d 704 (2d Cir.2003). The plaintiffs in *DeMuria* alleged that the defendant, a Clinton, Connecticut police officer, "subjected the plaintiffs to a different standard of police protection than any other citizens of Clinton and he did so maliciously, arbitrarily, for the purpose of injuring them, and for the reason that they were involved in a dispute with his friend." *Id.* at 705. Specifically, the plaintiffs alleged that they had been harassed by their next-door neighbor, and that when they complained to the police, the defendant told them that he would handle their complaints. Allegedly, he concealed the fact that he was a friend of the neighbor, and because of his relationship with her, he did little or nothing to protect the plaintiffs from her.

The district court in *DeMuria* dismissed the complaint, finding that the equal protection claim had not been pled with sufficient specificity because the plaintiffs had not named any similarly situated individuals or identified any differently handled disputes. The Second Circuit reversed, relying primarily on the Supreme Court's decision in *Village of Willowbrook v. Olech,* 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (per curiam), in which the Court held that a successful equal protection claim may be "brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id.* at 564, 120 S.Ct. 1073.

Stating that "the *Olech* opinion does not establish a requirement that a plaintiff identify in her complaint actual instances where others have been treated differently for the purposes of equal protection," the Second Circuit held that the plaintiffs' "general allegation that Hawkes gave them a different standard of police protection

than that typically afforded a resident of Clinton" was "sufficient, albeit barely, to meet the minimal level established by *Olech* for 'class of one' equal protection claims at the pleading stage." *DeMuria*, 328 F.3d at 707. The court also held that the plaintiffs' allegation that the defendant "acted maliciously and arbitrarily because they were involved in a dispute with his friend" was a sufficient "allegation of an impermissible motive and of animus ... to establish an equal protection issue." *Id.* The court concluded that "a plaintiff is also required under *Olech* to allege intentional disparate treatment, which the DeMurias have clearly done." *Id.*

The same reasoning applies in this case. Plaintiff has alleged, in general terms, that defendants singled him out by deliberately removing certain exculpatory information from his report, and that they did so for malicious reasons-to force his removal from the MORE team or from DEC altogether. As did the court of appeals in *DeMuria*, I find those allegations sufficient to state a claim for denial of equal protection.

As the Second Circuit also noted, however, plaintiff "face[s] a significant hurdle in finding evidence to prove [his] allegations of ... unequal treatment." *Id.* At this stage, however, it is only incumbent upon plaintiff to allege that he was treated differently from other employees in similar situations, and I conclude that he has done so. *See id.* at 707 (observing that "[s]uch concerns [about whether evidence will support claim of unequal treatment] should not defeat [plaintiffs'] claim at the pleading stage").

## II. Due Process Claim

I reach a different result as to plaintiff's due process claim, however. Although it is not clear whether plaintiff intends to assert a claim for denial of procedural or substantive due process, he has failed to state a claim for either.

As to substantive due process, the Supreme Court has observed that the Due Process Clause's "guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm[,]" *County of Sacramento v. Lewis*, 523 U.S. 833, 848, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998), and "does not transform every tort committed by a state actor into a constitutional violation." *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 202, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). Rather, to state a substantive due process claim, a plaintiff must allege action by a governmental officer that "is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Lewis*, 523 U.S. at 848 n. 8, 118 S.Ct. 1708; *see also Tenenbaum v. Williams*, 193 F.3d 581, 600 (2d Cir.1999) (action must be "shocking, arbitrary and egregious"). Such allegations are lacking here. Assuming the truth of plaintiff's allegations, defendants acted wrongly, and for improper motives, but their actions did not rise to the level required to state a substantive due process claim. *See, e.g., Anthony v. City of New York*, 339 F.3d 129, 143 (2d Cir.2003) (mentally disabled woman's temporary separation from sister due to her involuntary confinement at hospital was not so shocking, arbitrary, and egregious as to violate sister's alleged substantive due process rights of familial association); *DeMuria*, 328 F.3d at 705, 707 (affirming district court's finding that complaint did not allege "conscience-shocking" governmental action); *Smith ex rel. Smith v. Half Hollow Hills Cent. School Dist.*, 298 F.3d 168, 173 (2d Cir.2002) ("The protections of substantive due process are available only against egregious conduct which goes beyond merely 'offend[ing] some fas-

tidious squeamishness or private sentimentalism' and can fairly be viewed as so 'brutal' and 'offensive to human dignity' as to shock the conscience") (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 & n. 6 (2d Cir.1973)) (additional internal quotes omitted). *See also McClary v. O'Hare*, 786 F.2d 83, 89 (2d Cir.1986) ("the substantive component of the Due Process Clause does not provide a remedy to a public employee that would not be available to a private employee subject to identical conduct by his employer").

 Nor has plaintiff made out a procedural due process claim. To state such a claim, a plaintiff must first identify a property or liberty interest entitled to due process protections. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 538–539, 105 S.Ct. 1487, 84 L.Ed.2d 494, (1985); *Board of Regents v. Roth*, 408 U.S. 564, 576–578, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Here, plaintiff alleges that he "possesses a life, liberty, or property interest in his own emotional and physical health," and that defendants' actions damaged his health.

Courts have held, however, that there is no constitutionally protected interest in one's emotional well-being. *See, e.g., Santiago de Castro v. Morales Medina*, 943 F.2d 129, 131 (1st Cir.1991); *Pittsley v. Warish*, 927 F.2d 3, 7 (1st Cir.), *cert. denied*, 502 U.S. 879, 112 S.Ct. 226, 116 L.Ed.2d 183 (1991); *Griffith v. Johnston*, 899 F.2d 1427, 1435 (5th Cir.1990), *cert. denied*, 498 U.S. 1040, 111 S.Ct. 712, 112 L.Ed.2d 701 (1991); *DeLeon v. Little*, 981 F.Supp. 728, 736 (D.Conn.1997). Although plaintiff also alleges damage to his physical health, there is no allegation of any assault or other direct physical harm, and it appears that the alleged damage to his physical health is simply an offshoot or result of his alleged emotional distress. *See Abeyta By and Through Martinez v. Chama Val-*

*ley Independent School Dist., No. 19*, 77 F.3d 1253, 1258 (10th Cir.1996) ("We can imagine a case where psychological harassment might be so severe that it would amount to torture," but finding that teacher's conduct in calling a 12–year–old student a prostitute in front of her class for period of several weeks was not actionable as due process violation).

 Furthermore, although plaintiff might have a property interest in his continued employment, plaintiff admits that he never lost his job or any pay, or suffered any adverse employment action. He prevailed in the arbitration proceeding, where, by his own admission, he was "given a full opportunity to present evidence, testimony and argument and to examine and cross-examine witnesses who were sworn." Amended Complaint ¶ 54. That proceeding gave him all the process he was due. *See DiBlasio v. Novello*, 344 F.3d 292, 302 (2d Cir.2003) ("Generally, due process requires that a state afford persons 'some kind of hearing' prior to depriving them of a liberty or property interest") (quoting *Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 299, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981)); *see also DeLeon*, 981 F.Supp. 728, at 735 ("While [plaintiff] may have had a constitutionally protected property right in her continued employment, she was not deprived of this alleged right because she was neither actually nor constructively discharged from her employment") (footnote omitted).

While plaintiff contends that the process that was afforded to him was inadequate to remedy the alleged damage to his health, that simply goes back to his substantive due process claim. The root of plaintiff's purported due process claim is not the lack or inadequacy of the procedures that were followed, but the alleged wrongfulness of defendants' actions, which were not egre-

gious enough to give rise to a claim of denial of substantive due process.

## CONCLUSION

Defendants' motion to dismiss the amended complaint (Docket # 12) is granted in part and denied in part. Defendants' motion is granted as to plaintiff's second cause of action, and that cause of action is dismissed. In all other respects, defendants' motion is denied.[1]

IT IS SO ORDERED.

---

1. Apparently, plaintiff has also filed an action in New York State Court relating to the same incidents. Whether both cases should proceed in different fora, however, is an issue for another day.