OPINION OF THE COURT
Memorandum.
Ordered that the order is reversed, on the law, and defendant’s motion to dismiss the accusatory instrument on the ground that sections 176-6 (A) (1) and 176-7 (C) of the Tree Preservation and Landscape Maintenance Law (Code of the Village of Montebello) of the Village of Montebello are unconstitutional is denied.
By amended information dated November 18, 2011, defendant was charged with violating sections 176-6 (A) (1) and 176-7 (C) of the Tree Preservation and Landscape Maintenance Law of the Village of Montebello (Tree Law). Defendant moved to dismiss the accusatory instrument on the ground that the *66 aforementioned sections of the Tree Law are unconstitutional for reasons set forth below. In support of his motion, defendant stated that when he and his wife had purchased the property in question, it consisted of almost an acre of land with trees on the front of the property facing the town road and a backyard area that had been “left unattended and as a result became overgrown with mainly Ash trees that grew in a crowded manner . . . resulting in scrawny, pole-like trees that became unhealthy due to reaching their life expectancy and other causes, such as illness, disease and damage from vines.” At the time, defendant had three-year-old twins and wanted an attractive, safe backyard for his family. Therefore, in 2009, defendant hired a contractor to cut down some dead and dying trees, after which the Village of Montebello charged defendant with violating the aforementioned sections of the Tree Law, which required defendant to, among other things, obtain the Village’s permission to remove any tree on his property.[1]
In February 2010, defendant entered into a civil compromise with the Village by which, in lieu of prosecution, he agreed to pay the Village $250 and to “follow proper procedures with regard to any improvements/tree removal . . . concerning [his] property.” In July 2010, defendant applied for a permit to remove from his property 15 dead ash and elm trees, two oak trees — to which defendant was allegedly allergic — and one birch tree, and agreed to pay professional consulting fees pursuant to chapter 65 of the Code of the Village of Montebello. In August 2010, defendant’s application was approved to the extent of allowing 11 trees to be removed (eight dead or imminently dead trees, and three trees as of right). Defendant then hired a professional tree cutting company to remove the trees and alleges that, as the work was being performed, an officer of the Village stopped the work. By that time, 14 trees had, allegedly, been cut down. Thereafter, defendant was charged with violating sections 176-6 (A) (1) and 176-7 (C) of the Tree Law. On January 31, 2012, the Justice Court granted defendant’s motion to dismiss the accusatory instrument. The court found that a zoning matter could not be prosecuted if it “does not have the underlying proper legislation in terms of taking into account the particular statute as being necessary to secure the health, safety and *67 welfare of [the Village’s] residents, or [the Village’s] landowners, or [the Village’s] taxpayers.”
The Tree Law provides in pertinent part as follows:
“§ 176-2 Legislative intent.
“It is the intention of the Village of Montebello to retain the rural appearance of the community. Said rural appearance is a consequence of its existing wooded character and streetscape. Toward that end, the Village Board has implemented these regulations for the following purposes:
“A. To preserve an important attribute of the Village, by encouraging owners of existing developed lands, and developers of lands, to save or replace as many native and mature tree species as possible when making improvements to real property.
“B. To control and regulate indiscriminate and excessive removal, cutting, and destruction of trees in order to regulate and prevent conditions which cause increased surface runoff, soil erosion, and cause decreased soil fertility;
“C. To maintain the stability and value of real estate by preserving existing woodlands and providing for the appropriate aesthetic of the streetscape; and
“D. To ensure the continued maintenance of landscaping in accordance with site plan or subdivision plan approvals, or in accordance with the regulations contained herein. . . .
“§ 176-6 Tree removal; permit; Planning Board review; licensing of contractors; fees.
“A. Prohibited activities. Except as permitted herein, no person shall do or cause to be done by others, either purposely, carelessly, or negligently, any of the following acts upon privately owned property within the Village of Montebello:
“(1) Cut, destroy, remove, or substantially injure any tree except as may be permitted in Subsection B, permitted activities, below. . . .
“B. Permitted activities. Notwithstanding the restrictions above, the following activities shall be permitted:
“(1) The cutting, pruning, or trimming of trees in a manner that is not harmful to the health of the tree.
“(2) The cutting, destruction or removal of trees which are dead or imminently dead or which endan *68 ger public safety and pose imminent peril, such condition confirmed by the Village Engineer, or his or her designee as chosen by the Village Board of Trustees, with the assistance of an arborist if the Village Engineer or designee believes same necessary to facilitate making an informed decision in the circumstances, in the form of a permit issued after application and after payment of a permit fee set by said Board by resolution, and prior to cutting or removal. . . . Any person who cuts, destroys or removes trees for said purpose without first obtaining a permit because he or she believed that public safety was endangered or an imminent peril posed shall submit a written application to the Planning Board made within five days after the cutting, destruction or removal of trees has occurred ... In the case of removal without a permit, independent proof (such as a photograph, police report or arborist’s certification) is required in accordance with § 176-6D, Exceptions, in order to obtain approval from the Planning Board excepting said person from the regulations contained herein. The Planning Board may also request the Village Engineer, Village Planner or other Village consultant to assist in evaluating such applications. The fees charged to the Village by all such consultants shall be paid by the applicant. Removal of trees for nonimminent perils shall be governed by § 176-6B(4).
“(3) Upon receipt of a permit after application to the Village Engineer or other designee of the Village Board and payment of a permit fee set by said Board by resolution, . . . the cutting or removal of not more than one tree per 10,000 square feet of lot area during any two-year period but, irrespective of lot area, in no event removal of more than eight trees per lot in any two-year period, or 12 trees in any six-year period, unless said removal is in accordance with a site or subdivision plan duly approved by the Planning Board. In the latter case, trees shall have been identified on said plans, and no additional trees shall be cut without approval of the Planning Board. For the purpose of this provision, ‘year’ shall be construed to be the calendar year. . . .
“D. Exceptions. Upon written application to the Planning Board, and after payment of a permit fee *69 set by the Board of Trustees by resolution, the Planning Board may, by resolution, grant an exception from any of the requirements of this chapter ... if the enforcement of one or more of the provisions is impractical or will exact undue hardship because of peculiar conditions pertaining to the property in question but, in so granting, may require that a compensatory planting or compensatory payment be made. The Planning Board may also request the Village Engineer, Village Planner or other Village consultant to assist in evaluating such applications. The fees charged to the Village by all such consultants shall be paid by the applicant.
“E. Planning Board review standards and fees. . . . “(5) The fees for an application to the Planning Board for tree removal shall be $250 or other such fee as set from time to time by resolution of the Village Board. The Planning Board may also request the Village Engineer, Village Planner or other Village consultant to assist in evaluating such applications. The fees charged to the Village by all such consultants shall be paid by the applicant. . . .
“§ 176-7 Penalties for offenses.
“A. . . . [A]ny person violating any of the terms or provisions of this chapter or refusing to comply with the rules and regulations of this chapter shall, upon conviction, be subject to a fine not exceeding $250 for each offense. Each tree that is cut or damaged without appropriate approval from a Village agency shall constitute a single offense, up to a maximum penalty of $10,000 per lot. . . .
“C. In addition to being subject to prosecution and fining, any person having violated this chapter shall also be referred to the Planning Board for the purpose of developing a tree remediation plan, showing the existing and proposed landscaping conditions on the premises in question, and which shall be designed to mitigate the effects of the offense, which shall be known as the ‘compensatory planting plan’ or, if the Planning Board approves in lieu thereof, the making of a compensatory payment to the Tree Fund. The Planning Board may also require such remedial or protective measures to be undertaken as may be necessary to protect the balance of the original landscaping . . . The Planning *70 Board may also request the Village Engineer, Village Planner or other Village consultant to assist in evaluating the violation and recommending a remediation. The fees charged to the Village by such consultants shall be paid by the violator.
“D. In addition to any penalty, the violator will be required to effectuate a compensatory planting by replacing in kind each and every tree removed, cut down or destroyed in violation of this chapter. . . . [I]n appropriate circumstances where the planting of additional trees is impractical in the judgment of the Planning Board, it may accept compensatory payment to the Tree Fund in lieu of planting as it may direct.” (Citations omitted.)
Chapter 65 of the Code of the Village of Montebello, “CONSULTANT FEES,” provides in pertinent part as follows:
“§ 65-2 Reimbursement of consultant fees.
“A. In addition to the application fees required to be paid by an applicant, the applicant shall also reimburse the Village for any and all fees paid by the Village in connection with the review of such application by the Planning Board, Zoning Board of Appeals or Board of Trustees. . . .
“§ 65-3 Scope of professional services; rates.
“Such professional services shall be limited to those customarily rendered in the County of Rockland,
State of New York, in connection with the review of applications for relief as set forth in § 65-1 hereof, by municipal boards and agencies. Fees for such services shall be charged on a time and expense or flat basis, as the case may be, and as is customary in the County of Rockland, State of New York for such services. . . .
“§ 65-7 Unpaid fees to become lien upon premises.
“Any fee statement which remains unpaid . . . shall become a lien upon the premises for which the application was made. . . .
“§ 65-11 Authority.
“This chapter is enacted by authority of § 20, Subdivision 5, of the Municipal Home Rule Law and any other law referenced herein as authority here-for.” (Citations omitted.)
In regard to tree preservation, General Municipal Law § 96-b, “Tree conservation,” specifically allows for the adoption *71 of tree preservation laws. The stated legislative intent behind the Village of Montebello’s Tree Law is to, among other things, preserve trees, provide appropriate aesthetic streetscapes, and regulate and prevent conditions which cause increased surface runoff, soil erosion, and decreased soil fertility (see Tree Law § 176-2). Such intent is supported by General Municipal Law § 96-b (1), which recognizes that trees
“abate noise, provide welcome shade to people, preserve the balance of oxygen in the air by removing carbon dioxide and fostering air quality, and add color and verdure to human construction. They also stabilize the soil and control water pollution by preventing soil erosion and flooding, yield advantageous microclimatic effects, and provide a natural habitat for wildlife. The destructive and indiscriminate removal of trees and related vegetation causes increased municipal costs for proper drainage control, impairs the benefits of occupancy of existing residential properties and impairs the stability and value of both improved and unimproved real property in the area of destruction, and adversely affects the health, safety, and general welfare of the inhabitants of the state.”
In addition, an ordinance can have the purpose of promoting aesthetic considerations which bear substantially on the economic, social and cultural community (see General Municipal Law § 96-b [1]; Matter of Society for Ethical Culture in City of N.Y. v Spatt, 51 NY2d 449 [1980]; People v Scott, 26 NY2d 286 [1970]; Matter of Cromwell v Ferrier, 19 NY2d 263, 272 [1967]). Consequently, there is no merit to defendant’s argument that the Tree Law is ultra vires because there is no enabling authority for it.
Moreover, there is no merit to defendant’s argument that the Tree Law is ultra vires because the fees associated with the law are unreasonable and, thus, violate the requirement of General Municipal Law § 96-b (2). Municipal Home Rule Law § 10 (1) (ii) (a) (9-a) specifically allows for “[t]he fixing, levy, collection and administration of local government . . . fees . . . and . . . liens on local property in connection therewith and charges thereon.” The Court of Appeals has long held that the power of a village to charge fees must be reasonably necessary to the accomplishment of the regulatory program (see Twin Lakes Dev. Corp. v Town of Monroe, 1 NY3d 98, 107 [2003]; Jewish Reconstructionist Synagogue of N. Shore v Incorporated Vil. of Roslyn *72 Harbor, 40 NY2d 158, 163 [1976]). In Twin Lakes Dev. Corp., the Court upheld a town code requirement that the town be reimbursed for consultant services. Here, not only does the Tree Law properly require reimbursement of consultant fees (see Tree Law § 176-7 [C]), it also provides for an audit procedure for such fees (see Code of Village of Montebello ch 65).
The Fifth Amendment of the United States Constitution— which applies to the states through the Fourteenth Amendment (see NY Const, art I, § 7 [a]) — provides that “[n]o person shall be . . . deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation” (see Dolan v City of Tigard, 512 US 374, 383-384 [1994]). “Governmental regulation of private property effects a taking if it is ‘so onerous that its effect is tantamount to a direct appropriation or ouster’ ” (Consumers Union of U.S., Inc. v State of New York, 5 NY3d 327, 357 [2005], quoting Lingle v Chevron U. S. A. Inc., 544 US 528, 537 [2005]; see also Held v State of New York Workers’ Compensation Bd., 85 AD3d 35, 43 [2011]).
In the Justice Court, defendant argued that the Tree Law is unconstitutional in that (1) it takes his private property for public use without compensation since it “takes” all trees at least four inches in diameter and gives the Village the right to demand a tree cutting application and to intrude upon private property, to have the homeowner pay for consultant fees, and to demand restoration, (2) it takes his private property for public use by creating a de facto forest or nature preserve in his backyard and, therefore, he is entitled to just compensation under the Fifth and Fourteenth Amendments, and (3) the burdensome consultant fees, and other fees imposed by the Tree Law, amount to a taking in view of the “grossly burdensome, unreasonable and excessive governmental regulation.”
“[A] claim that the application of [a] government [ordinance] effects a taking of a property interest is not ripe until the government entity charged with implementing the [ordinance] has reached a final decision regarding the application of the [ordinance] to the property at issue” (Williamson County Regional Planning Comm’n v Hamilton Bank of Johnson City, 473 US 172, 186 [1985]). In addition, a claim is not ripe if compensation was not sought through the state procedures provided for same (id. at 194). Tree Law § 176-6 (B) (2) and (D) delineate the process by which a property owner can seek a retroactive application for a permit to remove trees and *73 an exception to any requirement of chapter 176. In addition, Code of the Village of Montebello § 65-6 provides the process for an applicant to dispute the amount of consultant fees charged by the Village. The record reveals that, although defendant had started the procedure to obtain an exception to the requirements of chapter 176, he thereafter abandoned his application, which application has yet to be approved or denied. Consequently, since defendant failed to fully pursue an exception to the Tree Law, and given the fact that defendant did not show that there was a final decision, in that the process could be reinstated and continued, his takings claim is not ripe (see Williamson County Regional Planning Comm’n v Hamilton Bank of Johnson City, 473 US at 186; Novie v Village of Montebello, 2012 WL 3542222, 2012 US Dist LEXIS 115948 [SD NY, Aug. 16, 2012, No. 10-CV-9436]; Hunter v Town of Chili, NY, 2010 WL 598679, 2010 US Dist LEXIS 14141 [WD NY, Feb. 18, 2010, No. 09-CV-6285]). In addition, since defendant failed to show that he had sought compensation through state procedures providing for same, and had not received compensation, his claim is not ripe (see Williamson County Regional Planning Comm’n v Hamilton Bank of Johnson City, 473 US at 194).
To the extent that defendant argued that the consultant fees of the Tree Law deprived property owners of due process or, as applied, deprived him of due process, such an analysis requires a determination of whether an ordinance goes so far as to effect a taking as an invalid exercise of police power which is violative of the Due Process Clause of the Fourteenth Amendment. “The remedy for a[n] [ordinance] that goes too far, under the due process theory, is not ‘just compensation,’ but invalidation of the [ordinance], and if authorized and appropriate, actual damages” (Williamson County Regional Planning Comm’n v Hamilton Bank of Johnson City, 473 US at 197). However, as previously stated, “a claim that the application of [a] government [ordinance] effects a taking of a property interest is not ripe until the government entity charged with implementing the [ordinance] has reached a final decision regarding the application of the [ordinance] to the property at issue” (id. at 186).
Inasmuch as chapter 65 of the Code of the Village of Montebello clearly provides for adequate process, which defendant, admittedly, has chosen not to pursue, his procedural due process challenge to the consultant fees is not ripe (see Novie v Village of Montebello, 2012 WL 3542222, *15-16, 2012 US Dist LEXIS 115948, *55-66; see also New York State Natl. Org. for Women v *74 Pataki, 261 F3d 156, 169-170 [2d Cir 2001]). Moreover, to the extent that defendant raises a substantive due process challenge to the consultant fees, such a challenge fails because defendant has not shown that chapter 65 is “so outrageously arbitrary as to constitute a gross abuse of governmental authority” (Natale v Town of Ridgefield, 170 F3d 258, 263 [2d Cir 1999]) and “ ‘so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience’ ” (Bullock v Gerould, 338 F Supp 2d 446, 451 [WD NY 2004], quoting County of Sacramento v Lewis, 523 US 833, 848 n 8 [1998]; see also Ruston v Town Bd. for Town of Skaneateles, 2009 WL 3199194, *5-6, 2009 US Dist LEXIS 90964, *13-19 [ND NY, Sept. 30, 2009, No. 5:06-CV-927 (FJS/GHL)]).
Ordinances, like other legislative enactments, are presumed to be constitutional, and the party challenging the ordinance has the burden to prove its unconstitutionality beyond a reasonable doubt (see McMinn v Town of Oyster Bay, 66 NY2d 544, 548-549 [1985]; see also Overstock.com, Inc. v New York State Dept. of Taxation & Fin., 20 NY3d 586 [2013]; LaValle v Hayden, 98 NY2d 155, 161 [2002]).
“In order for a[n] . . . ordinance to be a valid exercise of the police power it must survive a two-part test: (1) it must have been enacted in furtherance of a legitimate governmental purpose, and (2) there must be a ‘reasonable relation between the end sought to be achieved by the regulation and the means used to achieve that end.’ If the ordinance fails either part of this test, it is unreasonable and constitutes a deprivation of property without due process of law under our State Constitution” (McMinn v Town of Oyster Bay, 66 NY2d at 549 [citations omitted]; see also Town of Orangetown v Magee, 88 NY2d 41, 53 [1996]; Fred F. French Inv. Co. v City of New York, 39 NY2d 587, 595-596 [1976]).
Tree Law § 176-6 (A) (1) delineates what a person cannot do, with respect to trees, on privately owned property, and Tree Law § 176-6 (B) delineates the permitted activities on such property, and provides when a property owner must obtain a permit to remove a tree. As previously discussed, contrary to defendant’s argument, the Tree Law was enacted for the legitimate governmental purpose of preserving trees, providing appropriate aesthetic streetscapes, and regulating and preventing conditions which cause increased surface runoff, soil erosion, and decreased soil fertility (see Tree Law § 176-2), and is supported *75 by the home rule grant of authority. Moreover, we find that there is a reasonable relationship between the aforementioned ends sought to be achieved by the ordinance and the means used (i.e., the permit and fee process) to achieve that end. Consequently, defendant has not shown that the Tree Law is unreasonable and constitutes a deprivation of property without due process of law (see McMinn v Town of Oyster Bay, 66 NY2d at 549).
Furthermore, there is no merit to defendant’s argument that the Tree Law is a content-based violation of his First Amendment right to freedom of expression. It is well settled that “[a]rtistic expression, whether written or visual, is clearly protected by the First Amendment” (People for Ethical Treatment of Animals v Giuliani, 105 F Supp 2d 294, 304 [SD NY 2000]; see also Bery v City of New York, 97 F3d 689, 696 [2d Cir 1996]), and art is a “a quintessential form of expression” (People for Ethical Treatment of Animals v Guiliani, 105 F Supp 2d at 304). However, defendant has not shown that his desire to landscape his backyard to create a lawn is protected speech or conduct in that it amounts to artwork that is “a quintessential form of expression.”
Pursuant to section 1 of the Fourteenth Amendment of the United States Constitution, a state is prohibited from “denying] to any person within its jurisdiction the equal protection of the laws.” The New York State Constitution provides that
“[n]o person shall be denied the equal protection of the laws of this state or any subdivision thereof. No person shall, because of race, color, creed or religion, be subjected to any discrimination in his or her civil rights by any other person or by any firm, corporation, or institution, or by the state or any agency or subdivision of the state” (art I, § 11).
New York’s Equal Protection Clause is modeled after its federal counterpart, and “[u]nless a suspect class or a fundamental right is involved, which is not the case here, classifications that create distinctions between similarly-situated individuals will be upheld if they are rationally related to a legitimate government interest” (Matter of Walton v New York State Dept. of Correctional Servs., 13 NY3d 475, 492 [2009]). In determining whether a classification is rationally related to a legitimate government interest, the courts should “defer to the Legislature, which is presumed to know all facts that would support a statute’s constitutionality — a presumption which must be rebut *76 ted beyond a reasonable doubt” (People v Walker, 81 NY2d 661, 668 [1993]). In People v Knox (12 NY3d 60, 69 [2009]), the Court of Appeals noted that
“[t]he rational basis test is not a demanding one. We have repeatedly quoted the United States Supreme Court’s description of it as ‘a paradigm of judicial restraint’ (FCC v Beach Communications, Inc., 508 US 307, 314 [1993]; see Affronti v Crosson, 95 NY2d 713, 719 [2001]; Port Jefferson Health Care Facility v Wing, 94 NY2d 284, 290 [1999]). There is a strong presumption that legislative enactments are constitutional (see Montgomery v Daniels, 38 NY2d 41, 54 [1975]), and a party contending otherwise bears the heavy burden of showing that a statute is ‘so unrelated to the achievement of any combination of legitimate purposes’ as to be irrational (Affronti, 95 NY2d at 719, quoting Kimel v Florida Bd. of Regents, 528 US 62, 84 [2000]).”
To the extent that defendant argues that the Village’s “preserve woodlands” mandate raises equal protection concerns because pre-Tree Law property owners are allowed to have lawns, whereas newer property owners face costly bureaucratic hurdles to create a lawn, defendant is incorrect. The Equal Protection Clause “permit [s] the exercise by the State of a wide scope of discretion in enacting laws which affect some groups differently than others, and a statutory determination will not be set aside if any state of facts reasonably may be conceived to justify it” (Lighthouse Shores v Town of Islip, 41 NY2d 7, 13 [1976]). Since the challenged portions of the Tree Law (§§ 176-6 [A] [1] and 176-7 [C]) do not involve a suspect class or interfere with the exercise of a fundamental right,[2] the scope of judicial review is limited to whether the legislation is rationally related to a legitimate governmental objective (see Terminello v Village of Piermont, 92 AD3d 673, 674 [2012]). The legislative intent behind the Tree Law, as previously discussed, advances a valid public policy basis for affecting some groups differently than others (i.e., those owning property in the Village of Montebello prior to the implementation of the Tree Law and those purchas *77 ing property in the Village of Montebello after the implementation of the Tree Law), and defendant has not shown that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment (see Village of Willowbrook v Olech, 528 US 562, 564 [2000]; Matter of Hargrove v New York City School Constr. Auth., 95 AD3d 1116 [2012]; Matter of Goldstein v New York State Urban Dev. Corp., 64 AD3d 168, 186 [2009], affd 13 NY3d 511 [2009]).[3] Consequently, defendant’s equal protection challenge to Tree Law §§ 176-6 (A) (1) and 176-7 (C) fails.
Furthermore, defendant’s appellate argument, that the “accusatory instrument is facially deficient. . . considering that no injury to persons or property is alleged,” fails to raise a “question of law or issue of fact involving error or defect in the criminal court proceedings which may have adversely affected the appellant” (CPL 470.15 [1]; People v Goodfriend, 64 NY2d 695, 697-698 [1984]). Inasmuch as defendant has not been convicted of violating any section of the Tree Law, he has not been adversely affected and, therefore, the accusatory instrument’s facial sufficiency will not be considered on this appeal (see e.g. People v LaFontaine, 92 NY2d 470, 473 [1998]; People v Romero, 91 NY2d 750, 753 [1998]; People v Graham, 177 Misc 2d 542 [1998], affd 93 NY2d 934 [1999]). Defendant’s remaining contentions lack merit.
Accordingly, the order is reversed and defendant’s motion to dismiss the accusatory instrument is denied.
Nicolai, EJ., LaSalle and Tolbert, JJ., concur.

. Tree Law § 176-3 defines a “tree” as a “woody plant, the branches of which spring from and are supported upon a main trunk, with a caliper of four or more inches at the point of maximum width measured four feet from the ground.”

. Fundamental rights have been defined as those “deeply rooted in this Nation’s history and tradition” (Moore v East Cleveland, 431 US 494, 503 [1977]), which include the right to marry (see Loving v Virginia, 388 US 1 [1967]), the right to have children (see Skinner v Oklahoma ex rel. Williamson, 316 US 535 [1942]), the right to decide how to educate one’s children (see Meyer v Nebraska, 262 US 390 [1923]), and the right to engage in private consensual sexual activity (see Lawrence v Texas, 539 US 558 [2003]).

. It is noted that defendant has not asserted a class-of-one equal protection claim.